IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 622-005 |
| | ) | |
| MELVIN JAMARCUS LANIER | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Defendant, charged with illegal firearm possession and cocaine distribution, seeks to suppress all evidence obtained by law enforcement from a traffic stop on January 21, 2021. After careful consideration of the briefs and evidence presented at the hearing on September 1, 2022, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to suppress be **DENIED**. (Doc. no. 33.)

**I.     BACKGROUND**

On January 21, 2021, Statesboro Police Department Investigator Isaiah Francois was conducting a "proactive patrol," which he described as an effort to "make proactive contacts with people during a specific period to deter crime." (Transcript "Tr." at 6.) Investigator Francois stopped Defendant for failing to make a complete stop at a stop sign, and he testified the stop was a routine part of his effort that day, denying any intent to target Defendant. Tr. 6. There is no video footage of the initial traffic stop because the battery on Investigator Francois's body camera was dead. Tr. 5-6.

Approximately two to three months before this traffic stop, a confidential informant ("CI") told Investigator Francois, his supervisor, and another investigator, that Defendant: (1)

drove a white Dodge Charger with black accents; (2) currently sold narcotics in the Pine Street neighborhood and had been doing so for a long period of time; and (3) was always in possession of narcotics. Tr. 30-31, 41. Prior to becoming a CI, and approximately one year preceding the traffic stop, the CI had personally purchased narcotics from Defendant. Tr. 31. By the time of the traffic stop, the CI regularly provided tips to the police department concerning violent crime and drug trafficking in this same neighborhood for approximately one year, and he generally did so every month or two. Tr. 31-32. All prior tips had proven to be reliable, and officers had not detected any lies, exaggerations, or inaccuracies. Tr. 32. Based on this lengthy history, the officers trusted the CI to convey accurate and reliable information concerning criminal activity in the Pine Street neighborhood, and they trusted the tip concerning Defendant. Tr. 32.

On January 21, 2021, Defendant was driving a white Dodge Charger with black accents away from the Pine Street neighborhood when Investigator Francois initiated the traffic stop after observing Defendant failing to come to a complete stop at a stop sign on Johnson Street. Tr. 6, 14-15, 30-31. As Investigator Francois exited his patrol car and approached the vehicle, Defendant exited his vehicle and explained his windows did not roll down. Tr. 7. In the car, Investigator Francois observed a thirteen-year-old boy and numerous personal possessions, and Defendant explained he was just kicked out of his significant other's house. Tr. 7.

Investigator Francois observed Defendant to be frantic, nervous, and sweating profusely although it was cold outside, and he could see three open beer bottles in the center console of the vehicle. Tr. 7. Investigator Francois smelled alcohol on Defendant's breath, and Defendant was slurring his words. Tr. 7, 21, 34-35. Based on these observations and the CI's tip, Investigator Francois suspected Defendant was driving under the influence ("DUI")

of alcohol and in possession of narcotics. Tr. 8, 21-22. Investigator Francois described his routine procedure for investigating a DUI as: (1) calling a certified field sobriety officer to the scene to conduct a field sobriety test; and (2) conducting a search of the vehicle for evidence of drugs or alcohol. Tr. 8.

Investigator Francois asked Defendant for consent to search the vehicle, which Defendant denied, and Investigator Francois requested a K-9 unit over dispatch. Tr. 21-24. The sole purpose of requesting a K-9 unit was to investigate the CI's tip that Defendant sold narcotics out of the vehicle. Tr. 21-24. Investigator Francois testified that he suspected the vehicle contained narcotics when he first initiated the traffic stop based on the CI's tip, and his suspicion was "amplified" when he identified the driver as Defendant. Tr. 29.

Next, Investigator Francois conducted a check concerning Defendant's driver's license and learned that it was suspended because of an alleged failure to pay child support. Tr. 9. Because Defendant had not yet received formal notice of the suspension, routine procedure is to arrange for formal service of the suspension notice at the scene, refrain from charging the driver due to the lack of prior notice, prohibit the driver from driving the vehicle, and require the driver to arrange for removal of the vehicle from the roadway. Tr. 9-10, 34. After informing Defendant of the license suspension, Investigator Francois began writing a citation for the stop sign violation. Tr. 18-19.

Officer Brice Scott and his partner, K-9 Officer Mono, arrived while Investigator Francois was still in the process of completing his two traffic-related tasks of serving Defendant with notice of the license suspension and issuing a citation for the stop sign violation. Tr. 9-11. Officer Scott estimated he arrived approximately six minutes after Investigator Francois requested a K-9 unit. Tr. 10, 44. Officer Scott activated his body camera,

and the video footage is Government's Exhibit 1.  Tr. 44.  At Officer Scott's command, Mono approached the vehicle and gave a passive signal for detection of narcotics by sitting.  Tr. 44-45.  Officers searched the vehicle and found a handgun behind the center console, in reach of the passenger and driver's seat, and cocaine and digital scales inside a shoebox in the back seat.  Tr. 47.  Officers arrested Defendant for firearm and cocaine possession.  Tr. 74.  Investigator Francois neither issued a citation for the stop sign violation nor served Defendant with formal notice of the license suspension.  Tr. 10-11, 18.

## II.     DISCUSSION

Defendant argues the traffic stop was without reasonable articulable suspicion or probable cause, officers improperly delayed the traffic stop to conduct the K-9 sniff, and the stop was pretextual. (Doc. no. 33, p. 2.)  As explained below, the Court finds no basis for suppression of the evidence.

### A.     Witness Credibility

"Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses."  United States v. Williams, 731 F.3d 1222, 1230 (11th Cir. 2013) (citation omitted).  In making its credibility determination, the Court must take into consideration not only the interests of the witness and the internal consistency of his testimony, but also his candor and demeanor on the stand.  United States v. Ramirez-Chilel, 289 F.3d 744, 749-50 (11th Cir. 2002).  A reviewing court must accept the fact finder's determination "'unless it is contrary to the laws of nature or is so inconsistent or improbable on its face that no reasonable fact finder could accept it.'"  Id. at 749 (citation omitted).

In the sections that follow, the Court relies on the testimony of Investigator Francois

and, to a lesser extent, the testimony of Officer Scott. The Court finds both officers to be credible witnesses. Both testified in a thoughtful, candid, and consistent manner. Their testimonies withstood scrutiny on cross examination, and there are no material discrepancies between their testimony and the evidentiary record.

>    **B.     The Initial Traffic Stop Was Justified When Investigator Francois Observed Defendant Fail to Stop at a Stop Sign**

"The Fourth Amendment protects individuals from unreasonable search and seizure." United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003); U.S. Const. amend. IV. A traffic stop "is a seizure within the meaning of the Fourth Amendment," United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001) (citations omitted), but such a stop "is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with Terry." United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008) (*per curiam*) (citing Chanthasouxat, 342 F.3d at 1275). Although the movant generally bears the burden of showing that evidence should be suppressed, in the context of a warrantless search or seizure, the government must show that the encounter was consensual or that the search or seizure was justified. Harris, 526 F.3d 1334, 1337

Investigator Francois had reasonable suspicion to believe Defendant violated O.C.G.A. § 40-6-72 by failing to make a complete stop at a stop sign. Investigator Francois testified he personally observed Defendant commit this traffic infraction, and Defendant has submitted no evidence or argument to cast doubt on the veracity of the Investigator's testimony. Therefore, the initial traffic stop was proper.

Defendant suggests Investigator Francois was targeting him by looking for any excuse to pull him over and search the vehicle because of the CI's tip that Defendant sold narcotics

out of this vehicle and in this neighborhood. Investigator Francois denies an ulterior motive and, more importantly, any such motive would be irrelevant. As the Eleventh Circuit explained in United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997) (*per curiam*), the Supreme Court's decision in Whren v. United States, 517 U.S. 806, 808 (1996), "conclusively refutes the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe that a violation of law has occurred." Holloman, 113 F.3d at 194; see also United States v. Flippo, 759 F. App'x 907, 908 (11th Cir. 2019) (*per curiam*) (finding officers had reasonable suspicion to stop a known drug dealer who was under surveillance by police because he committed observable traffic violation, notwithstanding ulterior motive). While Investigator Francois never cited Defendant for the stop sign violation or served him with notice of the license suspension, exercising discretion not to charge Defendant or serve notice provides no basis for suppression of the evidence. See e.g., United States v. Woods, 385 F. App'x 914, 918 (11th Cir. 2018) (*per curiam*) ("[T]here is no constitutional requirement that a police officer issue a traffic citation.").

    **C.**    **Investigator Francois Permissibly Prolonged the Traffic Stop Based On Reasonable Suspicion of Narcotics Distribution**

"Because a routine traffic stop is only a limited form of seizure, it is more analogous to an investigative detention than a custodial arrest[, and] [t]herefore, we analyze the legality of these stops under the standard articulated in Terry v. Ohio, 392 U.S. 1 (1968)." Purcell, 236 F.3d at 1277. The reasonableness of an investigative stop turns on two inquiries: (1) whether the stop was reasonable at its inception, and (2) whether the stop became unreasonable in scope or duration. United States v. Street, 472 F.3d 1298, 1306 (11th Cir. 2006); United States v. Acosta, 363 F.3d 1141, 1144-45 (11th Cir. 2004). More specifically, an "officer's actions during a traffic stop must

be 'reasonably related in *scope* to the circumstances which justified the interference in the first place.'" Purcell, 236 F.3d at 1277 (quoting Terry, 392 U.S. at 20).

Thus, a traffic stop may last no longer than is necessary to address the traffic violation and related safety concerns. Rodriguez v. United States, 575 U.S. 348, 354-55 (2015). "An officer 'may conduct certain unrelated checks during an otherwise lawful traffic stop' so long as the officer does 'not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.'" United States v. Braddy, 11 F.4th 1298, 1310 (11th Cir. 2021) (quoting Rodriguez, 575 U.S. at 356). Ordinary inquiries incident to a traffic stop includes checking the driver's license, checking for outstanding warrants, inspecting the car's registration and insurance, identifying other passengers in the car, and asking questions about travel plans. Rodriguez, 575 U.S. at 355; United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003); United States v. Henderson, No. 2:20-CR-28, 2021 WL 3684149, at *8 (S.D. Ga. May 12, 2021), *adopted by*, 2021 WL 3030186 (S.D. Ga. July 19, 2021). "Because they 'serve the same objective as enforcement of the traffic code'—namely, 'ensuring that vehicles on the road are operated safely and responsibly'—those inquiries do not unconstitutionally extend the traffic stop." United States v. Vargas, 848 F.3d 971, 974 (11th Cir. 2017) (quoting Rodriguez 575 U.S. at 355).

Questions unrelated to the initial stop are permissible only if there is reasonable suspicion or "if the initial detention has become a consensual encounter." United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999). Unrelated inquiries include, for example, a dog sniff, questions about employment or gang affiliation, or questions concerning whether the driver is transporting luggage, weapons, or illegal items. Rodriguez, 575 U.S. at 356; Arizona v. Johnson, 555 U.S. 323, 329 (2009); United States v. Byron, 817 F. App'x 753, 756 (11th Cir.

7

2020) (*per curiam*); Pruitt, 174 F.3d at 1221.  An officer can no longer gain "bonus time" to ask questions unrelated to the stop by completing traffic-related tasks expeditiously.  Rodriguez, 575 U.S. at 357.  "The critical question . . . is not whether the [unrelated inquiry] occurs before or after the officer issues [the] ticket . . . but whether conducting the [unrelated inquiry] 'prolongs' – i.e., adds time to – 'the stop.'"  Id.  Even one unrelated question adding a few seconds to the stop's duration might constitute a violation.  Henderson, 2021 WL 3684149 at *27.

Here, Investigator Francois diverted from the initial purpose of the traffic stop to ask Defendant for consent to search the vehicle, and to request via dispatch for a K-9 unit after Defendant denied consent.  Even though Investigator Francois immediately returned to ordinary duties related to the traffic stop for the six minutes that it took for the K-9 unit to arrive, the Court must still determine whether this momentary diversion to ask for consent and request a K-9 unit impermissibly prolonged the stop.  As explained below, the diversion did not violate Defendant's constitutional rights because Investigator Francois nevertheless had reasonable suspicion of drug trafficking based on the CI's sufficiently reliable tip.

While the term "reasonable suspicion" is a less demanding standard than probable cause, the Fourth Amendment requires at least a minimal level of objective justification.  United States v. Perkins, 348 F.3d 965, 970 (11th Cir. 2003) (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)).  In determining whether reasonable suspicion is present, the Court must look to the totality of the circumstances to determine whether the officer has a particularized and objective basis for suspecting legal wrongdoing.  Id.  In examining the totality of the circumstances, the Court gives "due weight to the officer's experience" but an 'inchoate and unparticularized suspicion' or

8

'hunch' of criminal activity is not enough.  United States v. Briggman, 931 F.2d 705, 709 (11th Cir. 1991); Perkins, 348 F.3d at 970; Braddy, 11 F.4th at 1312.

"Reasonable suspicion may be based on information supplied by another person, as long as the information bears sufficient indicia of reliability." United States v. McCall, 563 F. App'x 696, 700-01 (11th Cir. 2014) (*per curiam*) (citing Adams v. Williams, 407 U.S. 143, 146-47 (1972)).  The extent to which police must scrutinize a tip to determine its reliability depends on the extent to which police are familiar with the confidential informant and can assess his or her character for truthfulness and basis of knowledge.  See id.

An anonymous tip requires the most rigorous scrutiny because the tip alone seldom, if ever, sufficiently demonstrates the informant's basis of knowledge and character for truthfulness.  Florida v. J.L., 529 U.S. 266, 270 (2000) (internal citations omitted).  A face-to-face tip from an anonymous person requires less scrutiny, which is presumed to be more reliable because "the officers receiving the information have an opportunity to observe the demeanor and perceived credibility of the informant." United States v. Mostowicz, 471 F. App'x 887, 889-90 (11th Cir. 2012) (*per curiam*); United States v. Heard, 367 F.3d 1275, 1279-80 (11th Cir. 2004).  A tip from a known criminal informant who is cooperating with law enforcement requires even less scrutiny because the police can assess the informant's reputation and character and hold the informant responsible if his or her allegations turn out to be fabricated.  Heard, 367 F.3d at 1279-80.

Here, the CI falls within the last category.  Investigator Francois testified the CI had, in the year preceding the tip concerning Defendant, developed a strong relationship with the police department by regularly providing accurate and truthful information concerning violent crimes and drug trafficking in the Pine Street neighborhood.  Investigator Francois thus had a

9

firm foundation for his unequivocal opinion that the CI tells the truth and can be trusted "to tell the truth about other things, 'including the claim that the object of the tip is engaged in criminal activity.'"  Navarette v. California, 572 U.S. 393, 397 (2014) (citing Alabama v. White, 496 U.S. 325, 332 (1990)).

The tip is also entitled to deference and is presumptively valid because the CI supported his tip of Defendant's current involvement in narcotics distribution in the Pine Street neighborhood with the admission that he personally purchased narcotics from Defendant on at least one occasion.  This is a strong basis of knowledge.  As the Eleventh Circuit explained, "[C]ourts have traditionally viewed information drawn from an ordinary witness or crime victim with considerably less skepticism than information derived from anonymous sources." Compare United States v. Martinelli, 454 F.3d 1300, 1307 (11th Cir. 2006) and United States v. Burbridge, 252 F.3d 775, 778-79 (5th Cir. 2001) (concluding citizen or eyewitness account of criminal activity is entitled to presumption of reliability and veracity) with J.L., 529 U.S. at 271 (finding anonymous tip about individual carrying gun lacked reliability because "[a]ll the police had to go on . . . was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the defendant]").

Even if the situation here required more scrutiny and independent verification of the tip, which it did not, Investigator Francois was able to corroborate key facts from the tip before asking for consent to search the vehicle.  Indeed, Defendant was driving the same vehicle described by the CI while leaving the very neighborhood the CI identified as his drug territory. Defense counsel suggested on cross examination of Investigator Francois that Defendant lives

in this same neighborhood, but Investigator Francois testified he had no knowledge of where Defendant lived at the time of the traffic stop. Tr. 13.

For these reasons, the CI's tip provided Investigator Francois with reasonable suspicion of drug trafficking to extend the traffic stop while he asked for consent to search the vehicle and requested a K-9 unit. Investigator Francois immediately returned to completing tasks associated with the traffic stop during the six minutes it took for the K-9 unit to arrive. Even if he had not resumed those activities, reasonable suspicion made the request and subsequent wait for the K-9 unit proper under the Fourth Amendment.

### D. Officers had Probable Cause to Search Defendant's Vehicle Based Upon Mono's Positive Alert

It is hornbook law that a positive alert by a trained drug dog, such as Mono here, provides probable cause to search a vehicle for drugs. United States v. Tamari, 454 F.3d 1259, 1265 n.6 (11th Cir. 2006) (citing Illinois v. Caballes, 543 U.S. 405, 410 (2005)). Defendant does not contend otherwise.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to suppress be **DENIED**. (Doc. no. 33.)

SO REPORTED and RECOMMENDED this 17th day of October, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA